## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEATHER BIRD, | : | CIVIL NO. 3:18-CV-2289 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (SAPORITO, M.J.) |
| | : | |
| BOROUGH OF MOOSIC, et al., | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM**

This is a civil rights action, initiated upon the filing of the complaint in this matter on November 29, 2018. (Doc. 1) An amended complaint was filed on June 7, 2019. (Doc. 25) In her amended complaint, the plaintiff, Heather Bird, alleges violations of her rights under the First Amendment of the United States Constitution through 42 U.S.C. § 1983. The plaintiff also asserts a state law claim of *quo warranto*. The defendants, Borough of Moosic and Richard Janesko, the Borough's chief of police, have moved to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 28.) This motion has been fully briefed and is ripe for disposition. (Doc. 31; Doc. 36; Doc. 41.) For the reasons set forth herein, we will grant the motion in part

and deny it in part.

## I.    *Statement of Facts*

In her amended complaint, the plaintiff alleges that in 2004, she was hired as a part-time police officer for the defendant, Borough of Moosic, where she has been working in that capacity in excess of fourteen years. (Doc. 25 ¶ 9.)  She alleges that on June 13, 2018, the Borough hired three full-time male police officers.  She asserts that the hires were in violation of the civil service commission's rules and regulations because the Borough did not provide any notice of the open positions, it did not use the civil service commission in hiring the three full-time male officers, and no civil service commission test was given for the full-time positions that were filled.  (*Id.* ¶¶ 10-13.)

The plaintiff alleges that on June 14, 2018, she "spoke out about the illegal hiring and preferential treatment for males to the Police Chief." (*Id.* ¶ 14.)  She maintains that she was retaliated against for speaking out on the alleged illegal misconduct and as a result her hours have been reduced, she has not been assigned special duty shifts while other newly hired male part-time police officers have been given those assignments, she sustained a loss in pay, and she has been subjected to her male co-

workers yelling at her and refusing to provide back-up on police calls. (*Id.* ¶¶ 15-16.)

The plaintiff further alleges that the filing of her complaint was published in The Times-Tribune on November 29, 2018. After the filing of her complaint was published in the newspaper, she asserts that she has been retaliated against for filing this action by not being scheduled for shifts and "specifically not getting the higher paying extra duty shifts." (*Id.* ¶¶ 26-27.) The alleged retaliation also included Chief Janesko's denial of the plaintiff's participation in the Lackawanna County District Attorney's Office's DUI Enforcement as well as her request to attend a Crisis Training Program, while allowing her male co-workers to attend the training. (*Id.* ¶¶ 26-32.)

Finally, the plaintiff alleges that despite the Borough maintaining civil service rules for the selection of full-time police officers, it failed to follow those rules when it hired the three male full-time police officers on June 13, 2018. (*Id.* ¶¶ 34-35.) The plaintiff maintains that the hiring of the three male police officers was illegal and they should be removed from their positions in that she was denied the opportunity to be selected as a full-time police officer in violation of the law. (*Id.* ¶¶ 36-39.)

Counts I and II of the amended complaint assert First Amendment claims for retaliation for speaking out as a citizen and for filing this action respectively. Count III alleges a state law claim of *quo warranto* seeking the removal of the three male police officers. On July 11, 2019, the defendants filed their motion to dismiss claiming that the amended complaint fails to state a claim upon which relief can be granted. (Doc. 28.)

## II. *Legal Standards*

Rule 12 (b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief is granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen, Inc.,* 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow*

*v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32-33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.,* 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). In deciding the motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellab, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

## III. Discussion

The defendants have moved for dismissal of the plaintiff's claims on a variety of grounds including whether the plaintiff has failed to articulate sufficient facts to support §1983 First Amendment retaliation claims; whether the plaintiff's *Monell* claim against the Borough should be dismissed; and whether the plaintiff's count III *quo warranto* claim should be dismissed for failure to state a claim.

### A.  42 U.S.C. § 1983 Claims

The plaintiff has brought this federal civil rights action under 42

U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of
> the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but

instead provides remedies for rights established elsewhere. *City of

Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim,

the plaintiff must establish that the defendants, acting under color of

state law, deprived the plaintiff of a right secured by the United States

Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.

1995). To avoid dismissal for failure to state a claim, a civil rights

complaint must state the conduct, time, place, and persons responsible

for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347,

353 (3d Cir. 2005).

### *1. First Amendment—Retaliation for Speaking-Out*

To establish a First Amendment retaliation claim, a public employee must show that his or her speech is protected by the First Amendment and that the speech was a substantial or motivating factor in what is alleged to be the employer's retaliatory action. *Flora v. Cty of Luzerne*, 776 F.3d 169, 174 (3d Cir. 2015); *see also Gorum v. Sessoms,* 561 F.3d 179, 184 (3d Cir. 2009). If the employee establishes both of those predicates, the burden shifts to the employer to show that it would have taken the same action even if the speech had not occurred. *Id.* A public employee's statement is protected by the First Amendment when: "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Flora*, 776 F.3d at 175 (quoting *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006)).

The parties dispute whether Bird was speaking as a citizen or as an employee of the Borough police department when she spoke out to Chief Janesko. In their motion, the defendants contend that the

amended complaint lacks factual specificity and the plaintiff must "present facts showing that she was speaking in her capacity as a citizen." (Doc. 31, at 9.) Bird's brief in opposition does not specifically address the issue whether she spoke as a citizen. (Doc. 36.)

In analyzing the first prong of the test—whether she spoke as a citizen—to determine whether Bird's statement is protected by the First Amendment, the key question is "whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). The Supreme Court's opinion in *Garcetti* sets forth the controlling test for determining whether a public employee's speech was made incident to his employment duties: "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. The "controlling factor" is whether the statements were "made pursuant to [the speaking employee's] duties," that is, whether such utterances were among the things that the employee "was employed to do." *Id.* at 421. The *Garcetti* Court did not advance a framework for defining when an employee speaks pursuant to his official duties. *Id.* at

424. It did, however, condemn reliance on "excessively broad job descriptions." *Id*. at 424–25. Further, it cautioned against a focus on formal job descriptions because "[t]he proper inquiry is a practical one." *Id*. A review of the amended complaint reflects Bird alleged that (1) she was acting and speaking as a citizen when she reported the official misconduct of Borough officials (i.e. the illegal hiring of full-time police officers); (2) she has no official duty to report official misconduct; (3) her duties as a borough police officer are to enforce the vehicle and criminal codes of the Commonwealth of Pennsylvania; and (4) her free speech is a matter of public concern. (Doc. 25 ¶¶ 17-21.) Accepting the facts alleged as true, as we must, the amended complaint contains sufficient factual allegations to plausibly establish that Bird's statements to Chief Janesko were not made pursuant to her ordinary job responsibilities.

Moving on to the second prong—whether the statements were matters of public concern—we are satisfied that Bird's statements, as alleged, constitute matters of public concern. The Third Circuit has repeatedly held that "[s]peech involving government impropriety occupies the highest rung of First Amendment protection." *Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 653 (3d Cir.

2018) (citing *McGreevy v. Stroup*, 413 F.3d 359, 365 (3d Cir. 2005)). "[A]llegations of corrupt practices by government officials are of the utmost public concern." *O'Donnell v. Yanchulis*, 875 F.2d 1059, 1061 (3d Cir. 1989); *see also Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979 (3d Cir. 2014) (disclosing details of superintendent misconduct is entitled to First Amendment protection). The amended complaint contains allegations that the Borough engaged in the illegal hiring of police officers in violation of the civil service commission. (Doc. 25 ¶¶ 10-13.) On the record before us, and accepting the allegations as true, we are satisfied that the statements made by Bird, as alleged in the amended complaint, are sufficient to satisfy this prong.

In determining whether the Borough had an adequate justification for treating Bird differently from any other member of the general public as a result of the statements she made—the third prong—we must await the development of a factual record. Therefore, we are satisfied that count I of the amended complaint plausibly sets forth a cause of action for First Amendment retaliation.

## 2. First Amendment—Initiation of the Instant Lawsuit

Bird alleged that she filed this lawsuit on November 29, 2018. (Doc. 1)  As a threshold matter, we must determine whether this activity properly qualifies as speech, to which our review in this case is limited. Generally, the act of suing a public employer may fall under either the Speech Clause or Petition Clause of the First Amendment, as the two clauses embody "cognate rights." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011) (quoting *Thomas v. Collins*, 323 U.S. 516, 530, (1945)). The Supreme Court has indicated, however, that filing a lawsuit qualifies as speech if a plaintiff "allege[s] that his employer retaliated against him for the speech contained within his ….. lawsuit." *Id*. at 387. Here, Bird has alleged that the defendants retaliated against her for filing this action. (Doc. 25 ¶27.)  She alleged that the retaliation consisted of (1) not being scheduled for shifts; (2) not getting the higher paying extra duty shifts; (3) suffering a loss of pay by not being scheduled for the shifts; (4) denying her participation in DUI enforcement and crisis training.  (*Id*. ¶¶27-32.)  In any event, the defendants do not appear to contest that Bird's filing this lawsuit constitutes speech activity.

Although the defendants do not contest that the filing of a lawsuit constitutes protected speech, we nonetheless undertake the full analysis. As to the first step of the analysis, we can reasonably infer that Bird's filing this action was not within her ordinary job responsibilities. As to the second step of the analysis, we must determine whether filing the instant case involved a matter of public concern. Here again, our precedent supports Bird's position. *Falco v. Zimmer*, 767 Fed. App'x 288, 307 (3d Cir. 2019) (police chief's filing of lawsuit was First Amendment protected speech); *see also Green v. Philadelphia Hous. Auth.*, 105 F.3d 882, 888 (3d Cir. 1997) ("[A]ll court appearances are matters of public concern. That is so because all court appearances implicate the public's interest in the integrity of the truth seeking process and the effective administration of justice."). The final step calls for balancing the defendants' interest in ensuring the efficiency of police services against Bird's interest in accessing the courts and the community's value in allowing all aggrieved parties to seek legal redress. The defendants have not provided any reason for treating Bird differently than any ordinary member of the public, accepting Bird's allegations as true, we must determine at this early stage of the litigation, Bird's interests are

stronger. Therefore, Bird's initiation of this lawsuit constitutes speech protected under the First Amendment.

### 3. Municipal Liability Claim

Bird seeks to hold the Borough liable for the alleged unconstitutional conduct of its employee, Chief Janesko. The defendant Borough contends that it cannot be liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id*. 436 U.S. at 690. A borough is such a municipality subject to liability as a "person" under § 1983. *McGreevy v. Stroup*, 413 F.3d 359, 367-69 (3d Cir. 2005).

But "[u]nder Monell, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007).

Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

The amended complaint does not allege that Janesko's conduct was "pursuant to a formal government policy or a standard operating procedure long accepted within the government entity," nor that "an official with authority has ratified the unconstitutional actions of a

subordinate, rendering such behavior official for liability purposes."[1] *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005). But a municipality may also be held liable for an employee who "has policy making authority rendering his . . . behavior an act of official government policy." *Id.*

But "not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses *final authority* to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (emphasis added). Thus, to adequately plead a *Monell* claim based on the conduct of a municipal employee, such as Janesko, the complaint must allege that he has *final policy making authority* with respect to the acts for which the plaintiff seeks to impose municipal liability. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 135 & n.11 (3d Cir. 2010). The plaintiff's amended complaint does not so allege. Moreover, whether a borough police chief is a final policymaker is a *legal* rather than a factual question, *id.* at 135 n.11, and as a matter of

---

[1] The amended complaint does allege that the Borough "acquiesced in all actions taken by its public officials and personnel" (Doc. 25 ¶ 6), but "[s]imply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 264 (3d Cir. 2010).

Pennsylvania state law, a borough police chief is *not* a final policymaker. *Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 606 & n.8 (M.D. Pa. 2013); *see also* 8 Pa. Cons. Stat. Ann. § 1123.1 (providing that a borough "mayor shall have full charge and control of the chief of police and the police force," and "shall direct the time during which, the place where and the manner in which the chief of police and the police force perform the duties of their rank"). *See generally Hoffman v. Borough of Macungie*, 63 A.3d 461, 469–70 (Pa. Commw. Ct. 2013).

Alternatively, "[a] municipality may be held liable under § 1983 for failure to train, monitor, or supervise, [but] only where the plaintiff can 'identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" *Watson v. Philadelphia Hous. Auth.*, 629 F. Supp. 2d 481, 487 (E.D. Pa. 2009)(quoting *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005)); *see also Nawuoh v. Venice Ashby Cmty. Ctr.*, 802 F. Supp. 2d 633, 645 (E.D. Pa. 2011) ("While municipal liability under § 1983 originally hinged on affirmative policies, or customs, modern jurisprudence has extended it to

a [municipality]'s failure to train, supervise and discipline its officers.").

> A three-part test applies to determine if a municipality's failure to train amounts to "deliberate indifference": "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."

*Kocher*, 926 F. Supp. 2d at 605 (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)).

Here, Bird has failed to allege that the Borough's failure to train amounted to deliberate indifference toward her constitutional rights. She has not alleged that the Borough's policymakers—the Borough's mayor and council, *see* 8 Pa. Cons. Stat. Ann. §§ 1121, 1123.1—knew that its employees would confront retaliation for raising concerns about compliance with civil service hiring rules or bringing employment-related litigation. Nor has she alleged any prior retaliatory conduct at all, much less a history of retaliatory conduct by Borough officials or employees. Thus, any failure by the Borough to train its employees did not amount to deliberate indifference to Bird's constitutional rights.

Therefore, we will dismiss the plaintiff's *Monell* claims against the Borough of Moosic.

### B.   Quo Warranto

In count III of the amended complaint, Bird makes a state law claim of *quo warranto* seeking the removal of the three male police officers because they were hired in violation of the Borough's civil service rules. The general rule is well settled that a *quo warranto* action constitutes the proper method to challenge title or right to public office. *In re One Hundred or More Qualified Electors,* 683 A.2d 283, 286 (Pa. 1996); *Andrezjwski v. Borough of Millvale*, 673 A.2d 879, 881 (Pa. 1996). The rationale for the exclusive nature of the *quo warranto* remedy is that:

> *[Q]uo warranto* is the Gibraltar of stability in government tenure. Once a person is duly elected or duly appointed to public office, the continuity of his services may not be interrupted and the uniform working of the governmental machinery disorganized or disturbed by any proceeding less than a formal challenge to the office by that action which is now venerable with age, reinforced by countless precedent, and proved to be protective of all parties involved in a given controversy, namely *quo warranto.*

*In re Bd. of Sch. Dirs.*, 180 A.2d 16, 17 (Pa. 1962).  Generally, only the attorney general or local district attorney may institute a *quo warranto* action.  *Qualified Electors*, 683 A.2d at 286.  "A party will be permitted to bring an alternative action to the remedy of *quo warranto* where the

18

Attorney General and the local district attorney refuse to bring such an action or if it would be a futile exercise to seek the approval of these officials." *Id.* at 286–87. But "[a] private party with a special interest in the matter may institute a *quo warranto* action without first notifying the Attorney General or the local district attorney." *Reed v. City of Harrisburg*, 995 A.2d 1137, 1140 (Pa. 2010).

The defendants contend that Bird lacks standing to bring a *quo warranto* action because she filed this action without first asking both the Attorney General and the local district attorney to bring the action, and because she has not alleged the requisite "special interest" permitting her to proceed with a *quo warranto* action. It is undisputed that the amended complaint does not allege that Bird requested the Attorney General or the local district attorney to bring a *quo warranto* action. "A private person will have standing to bring a *quo warranto* action only if that person has a special right or interest in the matter, as distinguished from the right or interest of the public generally, or if the private person has been specially damaged." *Qualified Electors*, 683 A.2d at 286. An individual who will be placed in the challenged public office if he succeeds with the *quo warranto* action has a special interest in the

matter to have standing to seek the issuance of a writ of *quo warranto*. *Coghlan v. Borough of Darby*, 844 A.2d 624, 628 (Pa. Commw. Ct. 2004). Bird's amended complaint alleges that the Borough was required to select full-time police officers under its civil service commission's rules and regulations, and its failure to follow those rules and regulations denied Bird "the opportunity to be selected" for a full-time position. (Doc. 25 ¶¶37-39) But even if successful in this action, Bird is not guaranteed to be placed in a position as full-time police officer. By her own allegation, if successful, she will only have "an opportunity to be selected" for the position—arguably the same opportunity that may apply to other members of the public generally. Therefore, based upon the foregoing, Bird has not pled sufficient "special interest" to have standing to seek a writ of *quo warranto*. Thus, Count III will be dismissed.

Similarly, Bird's contention that she stated a claim for wrongful discharge based upon the public policy exception to the at-will employment doctrine lacks merit. Bird has not alleged that she was discharged.

## C. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, it not clear that amendment would be futile, nor is there any basis to believe it would be inequitable. Thus, we will grant leave for Bird to file a second amended complaint within twenty-one (21) days following the partial dismissal of her amended complaint.

An appropriate order follows.

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: February 28, 2020