IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEATHER BIRD, | : | CIVIL NO. 3:18-CV-2289 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (SAPORITO, M.J.) |
| | : | |
| BOROUGH OF MOOSIC, | : | |
| et al., | : | |
| Defendants. | : | |

## **MEMORANDUM**

This is a civil rights action. In her amended complaint (Doc. 25), the plaintiff, Heather Bird, alleges violations of her rights under the First Amendment of the United States Constitution, made actionable by 42 U.S.C. § 1983. We granted in part and denied in part a motion to dismiss the amended complaint by the defendants. (Doc. 61). In her second amended complaint (Doc. 63), filed on March 17, 2020, the plaintiff brings the same claims for violations of her rights under the First Amendment of the United States Constitution. She also asserts a *quo warranto* claim,[1] and claims for

---

[1] The plaintiff recognizes that we have already dismissed this claim (Doc. 60; Doc. 61), but she states that she has kept this count for consistency and acknowledges that she is no longer able to pursue this claim at this level. (Doc. 63, at 9 n.3).

gender discrimination, hostile work environment, and retaliation under the Pennsylvania Human Relations Act.

Before the court is the defendants' motion to compel examination pursuant to Fed. R. Civ. P. 35. (Doc. 62). In their motion, the defendants request that the plaintiff participate in a Rule 35 psychiatric evaluation.[2] In her brief in opposition, Bird opposes the request for a psychiatric evaluation asserting that she has not put her psychiatric condition in controversy as she alleges only a garden variety emotional distress claim. The parties have briefed the issue (Doc. 65; Doc. 67; Doc. 72) and this matter is ripe for a decision. For the reasons set forth herein, we will grant the motion.

## I.    *Legal Standards*

Fed. R. Civ. P. 35(a) permits the court to order a party, whose mental or physical condition is in issue, to submit to a physical or

---

[2] Defendants propose utilizing Dr. Barbara Ziv to perform the IME and that it take place at 11:00 a.m. on Monday, August 3, 2020, in a private conference room at defense counsel's office in Moosic, Pennsylvania, assuming the current public health emergency has subsided. (Doc. 72, at 4).

mental examination and to specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it. However, the order may be made "only on motion for good cause" and on notice to all parties and the person to be examined. Fed. R. Civ. P. 35(a)(2)(A).

## II.   *Discussion*

Under Fed. R. Civ. P. 35, an order compelling a mental examination may be issued only where the mental condition of the party is "in controversy" and there is "good cause" for the order. *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964). One of the purposes behind Rule 35 is to "level the playing field" between the two parties in cases where a party's physical or mental condition has become an issue. *Womack v. Stevens Transp., Inc.* 205 F.R.D. 445, 446 (E.D. Pa. 2001) (citing *Ragge v. MCA/Universal*, 165 F.R.D. 605, 608 (C.D. Cal. 1995)).

In *Womack* the court identified two primary ways in which the mental or physical condition can be placed "in controversy" as follows:

> The first is where the mental or physical condition of the person is placed in issue by *another* party. In cases where the defendant seeks to make the plaintiff's mental state an

> issue, the defendant bears the burden of showing that the plaintiff's mental state is in controversy.
>
> The second is where the mental or physical condition of a person is placed in issue by the plaintiff through their pleadings.

205 F.R.D. at 446-47. (emphasis in original). *Schlagenhauf* observed that there are some cases, such as negligence suits, where the existence of a controversy regarding the plaintiff's mental or physical condition is readily apparent from the pleadings. *Schlagenhauf*, 379 U.S. at 118-19. "A plaintiff in a negligence action who asserts a mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id*.

A garden variety emotional distress claim is "insufficient to place the plaintiff's mental condition 'in controversy' for purposes of Rule 35(a)." *Kuminka v. Atlantic Cty. New Jersey*, 551 Fed. App'x 27, 29 (3d Cir. 2014) (per curiam).

> [A] mental examination is warranted where, in addition to a claim of emotional distress, the case involves one or more of the following factors:

> 1) a cause of action for intentional or negligent infliction of emotional distress; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a).

*Id.* (quoting *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995)); *see also Bowen v. Parking Auth. of City of Camden*, 214 F.R.D. 188, 193 (D.N.J. 2003) (same).

We must first determine if Bird has placed a mental health condition "in controversy" under the *Turner* test. In her second amended complaint, Bird makes no specific factual allegation that she sustained a mental injury, but in her demand for relief following each count of the amended complaint, she expressly requests relief for "emotional distress." (Doc. 63, at 4, 6, 7). In her brief in opposition, Bird has characterized her claims as being for "garden variety emotional distress," and not "abnormal severe emotional distress." (Doc. 67, at 2, 5). Although Bird does not allege a cause of action for intentional or negligent infliction of emotional distress, in her deposition, she testified that, as a result

of her work conditions, she suffers from "extreme anxiety" causing her to see a therapist and she has been diagnosed with post-traumatic stress disorder (PTSD). Bird does not plan to offer expert testimony to support her emotional distress damages, nor does she concede that her mental condition is "in controversy."

The defendants contend that Bird placed her mental condition "in controversy" with her deposition testimony.[3] Bird testified that, in scheduling her for work shifts, Chief Janesko took shifts away from her, causing her to suffer "extreme anxiety." Bird testified that she gets "physical and mental anxiety" due to the issues with work. She testified that she sees a therapist related to issues at work. Bird testified that her anxiety has worsened since Chief Janesko took charge. She testified that she has been

---

[3] The defendants have not attached the deposition transcript, although they have offered to provide it to the court upon request. We do not see the necessity of that exercise. In their brief, the defendants quote excerpted portions of Bird's deposition testimony and reference others. In her brief in opposition to the motion, Bird does not take issue with the defendants' quotation and citation of her deposition testimony nor does she quote or cite any other excerpts to support her position. Therefore, we presume that the defendants have accurately recited and referenced those portions of the deposition transcript set forth in their brief.

diagnosed with the specific psychiatric disorder of PTSD, severe enough to cause multiple hospital visits, which her therapist and psychiatrist have told her results from a hostile work environment. (Doc. 65, at 4-7).

Thus, the evidence adduced by the parties through discovery suggests that this case involves a specific psychiatric disorder of PTSD and a claim of unusually severe emotional distress. *See Kuminka*, 551 Fed. App'x at 29; *Bowen*, 214 F.R.D. at 193; *Turner*, 161 F.R.D. at 95. Through her deposition testimony, Bird has placed the issue of her mental condition in controversy; indeed, the existence, causation, and degree of her PTSD and extreme anxiety appear to be a central factual dispute with respect to damages. It would be unfair to allow a plaintiff to plead a garden variety emotional distress claim, and then allow him or her to amplify that claim at trial with testimony regarding extreme anxiety and a formal diagnosis of PTSD without permitting the defense to conduct a mental health examination.

We turn then to the "good cause" prong of Rule 35, a consideration that turns on the relevance and need for the psychiatric mental health

examination. *King v. Mansfield Univ. of Pa.*, No. 1:11-CV-1112, 2014 WL 563323, at *2 (M.D. Pa. Feb. 11, 2014).  Good cause requires a showing that the examination could adduce specific facts relevant to the cause of action, and that it is necessary to the defendant's case. *Id.* (citing *Womack*, 205 F.R.D. at 447). A mental examination is relevant in this case because, without it, the defense would be limited to mere cross-examination of Bird, a layperson and patient, regarding her mental health diagnoses.

As in *King,* the relevance requirement is satisfied here because fundamental fairness requires that the defendants be afforded an opportunity to examine Bird to determine whether she suffers from the mental health conditions to which she has testified at deposition. *Id.*

In deciding whether there is a need for a mental examination, the court must examine the "ability of the movant to obtain the desired information by other means." *Schlagenhauf,* 379 U.S. at 118. The current state of the record does not reflect whether the defendants attempted to obtain the medical records from Bird's therapist, medical doctor, or the hospital where she treated for her

mental health conditions arising out of the facts of this case. Nevertheless, as expert testimony is not required to corroborate a claim for emotional distress, *Bolden v. Se. Pa. Transp. Auth.*, 21 F.3d 29, 34 (3d Cir. 1994), we are persuaded by the following considerations.  First, Bird has made her emotional distress central to the issue of damages. Second, her diagnosis of PTSD, a mental health condition, and extreme anxiety came about before January 2018—Bird has alleged that she spoke out to Chief Janesko on June 14, 2018. (Doc. 63  ¶22). Finally, considering Bird's testimony identified by the defendants, there may be pre-existing conditions that may have contributed to her PTSD and anxiety. *See DiBrito v. Harrisburg Cmty. Coll.*, No. 1:08-CV-2308, 2010 WL 936236, at *1 n.4 (M.D. Pa. Mar. 12, 2010). All these considerations provide the defendants with good cause for an examination to determine the existence and extent of such asserted injury.

We conclude that the defendants have demonstrated good cause for ordering a mental examination of Bird with respect to her "extreme anxiety" and her diagnosis of PTSD. We agree that the defendants' expert must have some limited opportunity to examine Bird to determine the

nature and extent of this testimony and potentially to provide an opinion to challenge her assertion that the PTSD is causally related to her working conditions. Nevertheless, we do feel compelled to add some limitations to the examination such as: whether and to what extent Bird is suffering from emotional distress, mental injury, including PTSD; whether Bird's emotional distress is attributable to the defendants' conduct or to other factors (including pre-existing mental health issues); and to what extent any of Bird's alleged emotional distress which is attributable to either or both defendants has exacerbated her pre-existing physical or mental conditions. We will also direct that the examination take place after the Governor of Pennsylvania has lifted the stay-at-home order currently in effect and lawyers are permitted to return to their law offices unimpeded.[4]

An appropriate order follows.

**_s/Joseph F. Saporito, Jr._**
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated:  April 17, 2020

---

[4] This last condition should ameliorate the plaintiff's expressed concerns about the existence of the COVID-19 global pandemic.