UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

HEATHER BIRD,

    Plaintiff,

v.

BOROUGH OF MOOSIC, et al.,

    Defendants.

CIVIL ACTION NO. 3:18-cv02289

(SAPORITO, M.J.)

## MEMORANDUM

The case is assigned to us upon the consent of the parties, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 17; Doc. 18.) The matter is now before us on the defendants' motion to dismiss or to strike the plaintiff's second amended complaint, pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure. (Doc. 69.) The motion is fully briefed and ripe for disposition. (Doc. 73; Doc. 76; Doc. 77.)

### I. BACKGROUND

The plaintiff, Heather Bird, is a part-time police officer employed by the Borough of Moosic (the "Borough"), one of two defendants in this action. She alleges that, in 2018, after she had served for fourteen years as a part-time police officer, the Borough hired three full-time male police

officers without complying with civil service rules that would have required public notice of the vacancies and civil service testing before the positions were filled. Bird alleges that she spoke out about the "illegal hiring and preferential treatment for males" to the Borough's chief of police, Richard Janesko, the other defendant in this action. She alleges that she was then subjected to retaliation for speaking out: her work hours were reduced, she was not assigned special duty shifts while other, newly hired male part-time officers were given those assignments, she sustained a loss in pay, and she was subjected to her male co-workers yelling at her and refusing to provide back-up on police calls.

Bird commenced this action by filing her original civil rights complaint November 29, 2018. (Doc. 1.) The original complaint asserted a single count—a civil rights claim for retaliation under the First Amendment, made actionable by 42 U.S.C. § 1983.

On June 7, 2019, Bird filed her amended civil rights complaint. (Doc. 25.) The amended civil rights complaint added a second count of First Amendment retaliation, alleging that the defendants retaliated against her for filing this lawsuit. Bird alleged that she was not scheduled for shifts—specifically, she was not scheduled for higher paying extra-

duty shifts—causing her a loss of pay, and she was denied the opportunity to participate in DUI enforcement and crisis training programs. The amended civil rights complaint also added a third count, asserting a state-law *quo warranto* claim against the Borough.

On July 11, 2019, the defendants moved to dismiss the amended civil rights complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 28.) On February 28, 2020, we entered an opinion and order granting the motion in part and denying it in part. (Doc. 60; Doc. 61.) We dismissed Count III, the state-law *quo warranto* claim, in its entirety. We dismissed Counts I and II, the § 1983 First Amendment retaliation claims, with respect to the Borough, but denied the motion and permitted both claims to proceed with respect to Chief Janesko. In dismissing the amended civil rights complaint in part, we granted the plaintiff leave to file a second amended complaint, without any express limitations.

While the defendants' motion to dismiss the amended civil rights complaint was pending, the plaintiff filed an unopposed motion to consolidate a related employment discrimination action with this case, which we granted on August 12, 2019. (Doc. 34; Doc. 35.) The original

complaint in that employment discrimination action had been filed on July 18, 2019. (Doc. 1, Case No. 3:19-cv-01232.) It asserted a single count of gender discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, against the Borough. These employment discrimination claims arose out of the same factual basis as the plaintiff's civil rights claims.[1] On July 31, 2019, the plaintiff filed an amended complaint in her employment discrimination case, adding parallel state-law claims against the Borough under the Pennsylvania Human Rights Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 *et seq.* The amended complaint also added a second count asserting state-law PHRA claims against Janesko on an aiding-and-abetting or accomplice theory of liability.[2] After its consolidation into this case, the defendants filed an answer to the amended employment discrimination complaint on October 10, 2019.

---

[1] Unlike her civil rights claims, the plaintiff was required to exhaust administrative remedies with respect to her Title VII and PHRA claims as a prerequisite to suit.

[2] We note that, although Title VII does not permit for individual liability, the PHRA permits an individual supervisory employee to be held liable for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under his supervision. *Slater v. Susquehanna Cty.*, 613 F. Supp. 2d 653, 669–70 (M.D. Pa. 2009).

(Doc. 42.)

Following partial dismissal of her amended civil rights complaint, the plaintiff filed a comprehensive second amended complaint on March 17, 2020. (Doc. 63.) The comprehensive second amended complaint included five counts: Counts I and II, asserting § 1983 First Amendment retaliation claims against both defendants; Count III, asserting a state-law *quo warranto* claim against the Borough; Count IV, asserting Title VII and PHRA claims against the Borough; and Count V, asserting state-law PHRA claims against Janesko on an aiding-and-abetting or accomplice theory of liability. With respect to her § 1983 claims against the Borough in Counts I and II, the plaintiff has added new allegations that the borough mayor, James Segilia, approved and acquiesced in the allegedly retaliatory acts by Chief Janesko. In the margin, she has expressly acknowledged that her § 1983 claims against the Borough are not viable under a failure-to-train theory (*id.* at 3 n.1), and that her state-law *quo warranto* claim is no longer viable (*id.* at 9 n.3). Otherwise, the facts alleged and claims asserted in her comprehensive second amended complaint are substantively identical to those pleaded in the amended civil rights complaint and the amended employment discrimination

complaint. (*Compare* Doc. 63 *with* Doc. 25 *and* Doc. 4, Case No. 3:19-cv-01232.) Essentially, the comprehensive second amended complaint consolidates the operative claims from the two prior amended complaints into a single pleading, with a few newly added factual allegations seeking to cure some of the pleading defects upon which our dismissal of the § 1983 claims against the Borough were based.

The defendants have now moved to dismiss or strike the comprehensive second amended complaint. They argue that the comprehensive second amended complaint is not substantially different from the plaintiff's original or amended civil rights complaint, and thus it does not constitute a curative amendment. In particular, they note the plaintiff's retention of her previously dismissed failure-to-train and *quo warranto* claims, which she has expressly acknowledged as non-viable at this stage of the litigation. They further argue that consolidation of the plaintiff's Title VII and PHRA claims with her civil rights and *quo warranto* claims in this single, comprehensive complaint goes beyond the scope of the leave to amend we granted in our prior order partially dismissing the amended civil rights complaint.

## II. DISCUSSION

### A. Motion to Strike

The federal rules provide that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

> The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters. Because a motion to strike is not favored, a court will generally not grant such a motion unless the material to be stricken bears no possible relationship to the controversy and may cause prejudice to one of the parties. While a trial court has considerable discretion in whether to grant or deny such a motion, they are highly disfavored and should only be granted when the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.

*Loscombe v. City of Scranton*, 902 F. Supp. 2d 532, 547 (M.D. Pa. 2012) (citations and internal quotation marks omitted). "[T]he exercise of this power [to strike] should be reserved for cases in which the pleading is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Nagel v. Pocono Med. Ctr.*, 168 F.R.D. 22, 23 (M.D. Pa. 1996) (internal quotation marks omitted).

With respect to the plaintiff's civil rights and *quo warranto* claims, the defendants note that her comprehensive second amended complaint

is not substantially different from her amended civil rights complaint. In particular, they note that the second amended complaint maintains the plaintiff's previously dismissed *quo warranto* claim without modification, as the plaintiff herself has acknowledged, and they argue that any newly pleaded material has failed to cure the deficiencies in the amended civil rights complaint that led us to dismiss her § 1983 claims against the Borough. Based on this, they argue that Counts I, II, and III of the second amended complaint are immaterial and impertinent, and thus they should be stricken pursuant to Rule 12(f).

"An 'immaterial' matter has no essential or important relationship to the claim for relief or defenses pleaded." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005); *see also Burke v. Mesta Mach. Co.*, 5 F.R.D. 134, 138 (W.D. Pa. 1946). For example, "[a] statement of unnecessary particulars in connection with and descriptive of a material matter" or "[s]uperfluous historical allegations" may be stricken as "immaterial." *Wilkerson*, 229 F.R.D. at 170; *see also Burke*, 5 F.R.D. at 138. Meanwhile, "[a]n 'impertinent' allegation is neither responsive nor relevant to the issues involved in the action and which could not be put in issue or given in evidence between the parties." *Wilkerson*, 229 F.R.D.

at 170; *see also Burke*, 5 F.R.D. at 138. "An 'impertinent' matter consists of statements that do not pertain and are unnecessary to the issues in question." *Wilkerson*, 229 F.R.D. at 170.

We find the material highlighted by the defendants to be neither immaterial nor impertinent. The defendants do not seek to strike factual allegations with no essential or important relationship to the plaintiff's claims for relief, but rather the claims for relief themselves. Whether the second amended complaint has cured any pleading deficiencies found in the amended civil rights complaint is a question for our consideration under Rule 12(b)(6), not Rule 12(b)(f), particularly in the absence of any showing that the defendants have been prejudiced by the amended pleading. *See Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 365 F. Supp. 975, 982 (E.D. Pa. 1973); *Ryer v. Harrisburg Kohl Bros., Inc.*, 53 F.R.D. 404, 408 (M.D. Pa. 1971). While it might be appropriate to strike claims previously dismissed with prejudice, *see, e.g.*, *D. Russo Inc. v. Chiesa*, Civil Action No. 12-2397 (SRC), 2017 WL 3297509, at *5 (D.N.J. Aug. 2, 2017), the amended civil rights complaint in this case was dismissed *without prejudice* and the plaintiff was expressly granted leave to file a second amended complaint, which she has done.

The defendants also argue that the comprehensive second amended complaint should be stricken because it incorporates and duplicates the substance of the plaintiff's amended employment discrimination complaint. They note that they have already answered the amended employment discrimination complaint, and they suggest that accepting the comprehensive second amended complaint would leave us with two operative complaints in this matter. But we disagree with the defendants' construction of the pleadings. "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (citations omitted). Here, upon its filing, the comprehensive second amended complaint superseded both the amended civil rights complaint and the amended employment discrimination complaint, rendering each a legal nullity. *See id.*; *see also Filbert v. Westmoreland Cty. Prison*, 674 Fed. App'x 242, 244 (3d Cir. 2017) (approving district court's decision requiring a plaintiff to file a consolidated amended complaint after consolidating his § 1983 actions); *Jackson v. Dow Chem. Co.*, 902 F. Supp. 2d 658, 666 (E.D. Pa. 2012) (noting that, following consolidation, plaintiff

had been ordered to file a single consolidated amended complaint).

Accordingly, we will deny the defendants' motion to strike.

## B. Motion to Dismiss

In the alternative, the defendants have moved to dismiss Counts I, II, and III of the comprehensive second amended complaint as against the Borough.[3]

### 1. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged

---

[3] The defendants do not seek to dismiss the plaintiff's § 1983 claims against Chief Janesko (Counts I and II), the Title VII and PHRA claims against the Borough (Count IV), nor the PHRA claims against Chief Janesko (Count V).

on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

### 2. Failure-to-train and quo warranto *claims*

To the extent the comprehensive second amended complaint merely duplicates the substance of the amended civil rights complaint and those claims against the Borough that were previously dismissed for failure to state a claim, without any new factual allegations, the defendants'

motion to dismiss will be granted for the same reasons and based on the same legal authority articulated in our February 28, 2020, memorandum opinion and order. (Doc. 60; Doc. 61.) *See Spell v. Commonwealth of Pennsylvania Mag. Dist. # 05-2-11*, Civil Action No. 09-091, 2009 WL 2171232, at *1 (W.D. Pa. July 21, 2009). Thus, we will dismiss the plaintiff's § 1983 failure-to-train claims against the Borough, set forth in Counts I and II, and her state-law *quo warranto* claim, set forth in Count III, *with prejudice* and without leave to amend.

### 3. Ratification of Conduct by Borough Mayor

The comprehensive second amended complaint has added new allegations that the Borough mayor approved and acquiesced in the allegedly retaliatory acts by Chief Janesko. The parties dispute whether these new allegations are sufficient to cure the pleading deficiencies that led to dismissal of the plaintiff's § 1983 municipal liability claims against the Borough, set forth in Counts I and II.

As we noted in our previous decision, "[u]nder *Monell* [*v. Department of Social Services*, 436 U.S. 658 (1978),] a municipality cannot be subjected to [§ 1983] liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All Am. Rathskeller, Inc.*,

503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. One such scenario in which a municipality may be held liable under § 1983 is where the a municipal decisionmaker "possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1996). In our prior decision, we found that, as a matter of law, Chief Janesko was not a final policymaker for the Borough,[4] and that the amended civil rights complaint did not allege that his conduct had been ratified by an official with such final policymaking authority. *See McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) ("[A] municipality will be liable if an official with authority has ratified the

---

[4] We noted that state law provides that it is a borough *mayor* who has final authority with respect to the borough chief of police and police force. *See* 8 Pa. Cons. Stat. Ann. § 1123.1; *Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 606 & n.8 (M.D. Pa. 2013).

unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.").

In her comprehensive second amended complaint, the plaintiff has alleged that the mayor, an official with final policymaking authority with respect to the police department, *see supra* note 4, ratified the allegedly retaliatory actions by Chief Janesko. Specifically, the plaintiff alleges that the mayor "approved all actions of [Chief Janesko] as alleged in this Complaint, which includes the scheduling, training and payment of Police Officers" and "acquiesced in all official policy, customs, and decisions made by [Chief Janesko]." (Doc. 63 ¶¶ 4, 5.)

As the Supreme Court of the United States has explained:

> "[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (emphasis in original). At this stage of proceedings, the plaintiff has sufficiently alleged that Mayor Segilia had final and unreviewable policymaking authority with respect to the scheduling, training, and payment of police

officers, including the plaintiff. Thus, we find that she has stated a plausible cause of action against the Borough for the acts of its policymaker, Mayor Segilia, who allegedly approved and ratified the allegedly unconstitutional acts of his subordinate, Chief Janesko.[5] *See D.M. v. Cty. of Berks*, 929 F. Supp. 2d 390, 400 (E.D. Pa. 2013); *Dempsey v. Bucknell*, Civil Action No. 4:11-cv-1679, 2012 WL 1569826, at *10 (M.D. Pa. May 3, 2012).

Accordingly, we will deny the defendants' motion to dismiss the plaintiff's § 1983 claims against the Borough based on ratification by the borough mayor of the police chief's allegedly retaliatory conduct, as set

---

[5] We note that the comprehensive second amended complaint alleges that the borough mayor *affirmatively approved* the allegedly unconstitutional conduct by Chief Janesko. We find it reasonable to infer from this allegation of affirmative approval that the mayor was aware of the police chief's allegedly retaliatory motive. *See Walsifier v. Borough of Belmar*, 262 Fed. App'x 421, 425 (3d Cir. 2008) (citing *Praprotnik*, 485 U.S. at 127); *Ditzler v. Hous. Auth.*, 171 F. Supp. 3d 363, 371 n.4 (M.D. Pa. 2016) (noting that *Monell* liability may be imposed where a municipal supervisor with final authority knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so); *Wallace v. Powell*, Civil Action No. 3:09-cv-286, 2009 WL 6850318, at *15 (M.D. Pa. Nov. 20, 2009) ("Only where the supervisor is aware of the motive behind the behavior, does the municipality become liable." (citing *Praprotnik*, 485 U.S. at 127)). Whether the facts adduced by the parties through discovery will bear this out is a matter to be determined on summary judgment or at trial.

forth in Counts I and II of the comprehensive second amended complaint.

### III. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss or to strike the plaintiff's second amended complaint (Doc. 69) will be granted in part and denied in part. The plaintiff's § 1983 failure-to-train and state-law *quo warranto* claims will be dismissed with prejudice. The plaintiff's § 1983 retaliation claims against Chief Janesko, her § 1983 municipal liability claims against the Borough based on Mayor Segilia's ratification of Chief Janesko's allegedly retaliatory conduct, her Title VII and PHRA claims against the Borough, and her PHRA claims against Chief Janesko shall be permitted to proceed. The defendants will be directed to answer the comprehensive second amended complaint, with the exception of Count III, which has been dismissed with prejudice in its entirety.

An appropriate Order follows.

Dated: November 24, 2020

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge