# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

HEATHER BIRD,

      Plaintiff,

      v.

BOROUGH OF MOOSIC, et al.,

      Defendants.

CIVIL ACTION NO. 3:18-cv02289

(SAPORITO, M.J.)

## MEMORANDUM

The case is assigned to us upon the consent of the parties, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 17; Doc. 18.) The matter is now before us on a motion for summary judgment by the defendants. (Doc. 78.) This motion is fully briefed and ripe for decision. (Doc. 79; Doc. 80; Doc. 85; Doc. 90; Doc. 95.)

## I. BACKGROUND

The plaintiff, Heather Bird, is a part-time police officer employed by the Borough of Moosic (the "Borough"), one of two defendants in this action. She alleges that, in 2018, after she had served for fourteen years as a part-time police officer, the Borough hired three full-time male police officers without complying with civil service rules that would have required public notice of the vacancies and civil service testing before the

positions were filled. Bird alleges that she spoke out about the "illegal hiring and preferential treatment for males" to the Borough's chief of police, Richard Janesko, the other defendant in this action. She alleges that she was then subjected to retaliation for speaking out: her work hours were reduced, she was not assigned special duty shifts while other, newly hired male part-time officers were given those assignments, she sustained a loss in pay, and she was subjected to her male co-workers yelling at her and refusing to provide back-up on police calls.

Bird commenced this action by filing her original civil rights complaint November 29, 2018. (Doc. 1.) The original complaint asserted a single count—a civil rights claim for retaliation under the First Amendment, made actionable by 42 U.S.C. § 1983.

On June 7, 2019, Bird filed her amended civil rights complaint. (Doc. 25.) The amended civil rights complaint added a second count of First Amendment retaliation, alleging that the defendants retaliated against her for filing this lawsuit. Bird alleged that she was not scheduled for shifts—specifically, she was not scheduled for higher paying extra-duty shifts—causing her a loss of pay, and she was denied the opportunity to participate in DUI enforcement and crisis training

programs. The amended civil rights complaint also added a third count, asserting a state-law *quo warranto* claim against the Borough.

On July 11, 2019, the defendants moved to dismiss the amended civil rights complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 28.) On February 28, 2020, we entered an opinion and order granting the motion in part and denying it in part. (Doc. 60; Doc. 61.) We dismissed Count III, the state-law *quo warranto* claim, in its entirety. We dismissed Counts I and II, the § 1983 First Amendment retaliation claims, with respect to the Borough, but denied the motion and permitted both claims to proceed with respect to Chief Janesko. In dismissing the amended civil rights complaint in part, we granted the plaintiff leave to file a second amended complaint.

While the defendants' motion to dismiss the amended civil rights complaint was pending, the plaintiff filed an unopposed motion to consolidate a related employment discrimination action with this case, which we granted on August 12, 2019. (Doc. 34; Doc. 35.) The original complaint in that employment discrimination action had been filed on July 18, 2019. (Doc. 1, Case No. 3:19-cv-01232.) It asserted a single count of gender discrimination, hostile work environment, and retaliation in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, against the Borough. These employment discrimination claims arose out of the same factual basis as the plaintiff's civil rights claims.[1] On July 31, 2019, the plaintiff filed an amended complaint in her employment discrimination case, adding parallel state-law claims against the Borough under the Pennsylvania Human Rights Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 *et seq.* The amended complaint also added a second count asserting state-law PHRA claims against Janesko on an aiding-and-abetting or accomplice theory of liability.[2] After its consolidation into this case, the defendants filed an answer to the amended employment discrimination complaint on October 10, 2019. (Doc. 42.)

Following partial dismissal of her amended civil rights complaint, the plaintiff filed a comprehensive second amended complaint on March

---

[1] Unlike her civil rights claims, the plaintiff was required to exhaust administrative remedies with respect to her Title VII and PHRA claims as a prerequisite to suit.

[2] We note that, although Title VII does not permit for individual liability, the PHRA permits an individual supervisory employee to be held liable for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under his supervision. *Slater v. Susquehanna Cty.*, 613 F. Supp. 2d 653, 669–70 (M.D. Pa. 2009).

17, 2020. (Doc. 63.) The comprehensive second amended complaint included five counts: Counts I and II, asserting § 1983 First Amendment retaliation claims against both defendants; Count III, asserting a state-law *quo warranto* claim against the Borough; Count IV, asserting Title VII and PHRA claims against the Borough; and Count V, asserting state-law PHRA claims against Janesko on an aiding-and-abetting or accomplice theory of liability. With respect to her § 1983 claims against the Borough in Counts I and II, the plaintiff added new allegations that the Borough mayor, James Segilia, approved and acquiesced in the allegedly retaliatory acts by Chief Janesko. In the margin, she expressly acknowledged that her § 1983 claims against the Borough were not viable under a failure-to-train theory (*id.* at 3 n.1), and that her state-law *quo warranto* claim was no longer viable (*id.* at 9 n.3). Otherwise, the facts alleged and claims asserted in her comprehensive second amended complaint were substantively identical to those pleaded in the amended civil rights complaint and the amended employment discrimination complaint. Essentially, the comprehensive second amended complaint consolidated the operative claims from the two prior amended complaints into a single pleading, with a few newly added factual allegations seeking

to cure some of the pleading defects upon which our earlier dismissal of the § 1983 claims against the Borough were based.

On March 31. 2020, the defendants moved to dismiss or strike the second amended civil rights complaint. (Doc. 69.) On November 24, 2020, we entered an opinion and order granting the motion in part and denying it in part. (Doc. 83; Doc. 84, *as amended by* Doc. 94; *see also* Doc. 93.) We dismissed Count III, the state-law *quo warranto* claim, in its entirety, and we dismissed Counts I and II to the extent they asserted § 1983 failure-to-train claims against the Borough. We denied the motion with respect to all other grounds. The plaintiff's § 1983 retaliation claims against Chief Janesko (Counts I and II), her § 1983 municipal liability claims against the Borough based on ratification of policy chief's allegedly retaliatory conduct by the Borough mayor (Counts I and II), her Title VII and PHRA claims against the Borough (Count IV), and her PHRA claims against Chief Janesko (Count V) were permitted to proceed to discovery.

The defendants have now moved for summary judgment on the merits of the plaintiff's remaining claims.[3]

---

[3] The defendants also request summary judgment on the plaintiff's *quo warranto* claim (Count III), but that claim has already been dismissed with prejudice.

## II.   LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient

disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of

admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

### III.   UNDISPUTED MATERIAL FACTS

Heather Bird has been employed by the Moosic Borough Police Department as a part-time police officer since April 2004. She is the longest tenured part-time officer in the department.

At a June 13, 2018, Borough council meeting, the council voted to approve a motion to promote three 32-hour part-time officers—Officers McGovern, Jarecki, and O'Hora—to full-time, 40-hour per week positions with the department.[4] The motion also provided for elimination of these three 32-hour part-time officer positions. According to council meeting minutes, this action was taken in compliance with a 2005 ruling by an arbitrator in a labor dispute. In that ruling, an arbitrator apparently found that the 32-hour part-time positions were in violation of a collective

---

[4] We note that an excerpt from a collective bargaining agreement, submitted by the plaintiff in opposition to summary judgment, specifically identified these three officers—McGovern, O'Hora, and Jarecki—as "regular part time officers."

bargaining agreement ("CBA") with the police union. The arbitrator's ruling apparently provided that any officers holding 32-hour part-time positions must be placed in any 40-hour full-time positions as they became available, and those 32-hour part-time positions then would be eliminated. All three of the promoted officers are male. They were promoted into the full-time positions without any civil service testing or public notice of the vacancies.

Bird did not attend the Borough council meeting because she was working a special duty shift at a minor-league ballpark. After learning of the council's action, she met with the Borough police chief, Richard Janesko, in his office on June 14, 2018. Bird was not scheduled to work that day, and she did not have an appointment to speak with the chief. She went into the police station that day specifically to talk to the chief. She came dressed in her civilian clothes.

Bird asked Janesko how the three officers could have been hired full-time without any civil service testing. At deposition, she testified:

> I asked Chief Janesko how could they get hired at full time when there was no civil service. He stated it's done, it's over, don't worry about it. And I said it's an illegal hire. I asked him how could it be done without the civil service [testing]. He said that he was busy, that I need to leave[,] and he actually walked me out of

his office and I left [the police station].

(Bird Dep. Tr. 84–85 (June 25, 2019), Doc. 79-1, at 22, Doc. 89, at 22.)

Bird testified that, following that conversation, she lost shifts. Before that conversation on June 14, 2018, Bird was typically scheduled to work two or three 8-hour patrol shifts per week. In July 2018, she noticed that her shifts had been reduced. Since then, she has typically been scheduled to work one 8-hour patrol shift per week.

In addition to regular patrol shifts, Borough police officers had opportunities to work better-paying special duty shifts, such as at the ballpark, at a local movie theater, or for extracurricular events at the local school. Bird noticed that she was no longer being assigned special duty shifts either after her conversation with Janesko.

At one point, Bird put in a request for a special duty assignment with an interjurisdictional DUI task force, which she had learned about through a personal contact at the county district attorney's office. She testified that Janesko denied her the opportunity to serve on the task force, insisting instead that it be offered first to the full-time officers, all of whom were male. Ultimately, none of the full-time officers took the opportunity, and it was not offered to any of the Borough's part-time

officers.

At her deposition, Bird testified to her belief that her patrol shifts and special duty shifts were reduced by Janesko in retaliation for confronting him on June 14, 2018, and also based on her gender. She testified about the promotion of three male officers from part- to full-time positions without civil service testing, without following civil service procedures that would have given female candidates like herself an opportunity to be considered. She testified that the patrol and special duty shifts she had previously been working were assigned to male officers instead after the promotion of three male officers to full-time.

Bird testified that she was denied a training opportunity on one occasion as well. She requested to attend CIT training, but her request was denied by Janesko. Other officers, however, all of whom were male, were permitted to attend CIT training.

In opposition to summary judgment, Bird points to documents reflecting the income received by various part-time officers for special duty pay, noting that less-senior male part-time officers consistently received significantly more in special duty pay than Bird did.

Bird also testified that Janesko further retaliated against her for

filing this civil action in November 2018. When asked at her deposition what actions Janesko had taken in retaliation for filing this lawsuit, she testified:

> I believe he's talking to fellow officers regarding my situation. I believe that I've been cut on my shifts. I've lost shifts. I've lost extra duty. I believe that no disciplinary action is occurring when officers are doing something. And when it's been brought up in front of officers and the chief is made aware of it, I believe it's being allowed in the department when it shouldn't be.

(Bird Dep. Tr. 185–86 (June 25, 2019), Doc. 79-1, at 48, Doc. 89, at 48.)

In support of their motion, the defendants presented testimony by the Borough's police union president, Thomas Jenkins, a patrolman with the Borough police department. Jenkins testified that the June 2018 promotion of three male 32-hour part-time officers to full-time status without civil service testing or public notice of a vacancy was done in compliance with an arbitrator's ruling in a long-running labor dispute between the Borough and its police union, and not for discriminatory reasons.[5]

---

[5] The labor dispute apparently began in 1995 and culminated in an arbitration ruling in 2005. As we understand the deponent's testimony, the process of transitioning 32-hour part-time officers into full-time positions was apparently not completed until the June 2018 promotion of *(continued on next page)*

## IV.   DISCUSSION

### A. First Amendment Retaliation Claims

In Counts I and II, Bird claims that her work shifts—both patrol and special duty—were reduced in retaliation for her criticism of the promotion of three male part-time police officers to full-time status without civil service testing or a public vacancy announcement, and in retaliation for the filing of this lawsuit. As an hourly wage employee, she suffered a loss of income as a result. She also claims that she was denied certain training opportunities that were afforded to other officers.

To establish a § 1983 retaliation claim, a plaintiff must show: (1) constitutionally protected activity; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights; and (3) a causal link between the constitutionally protected

---

McGovern, O'Hora, and Jarecki, who were the last of the 32-hour part-time officers covered by the arbitrator's ruling. The plaintiff was not a part of this class of 32-hour part-time police officers, however. She appears to have been employed part-time with no specified minimum number of hours of work. The plaintiff disputes Jenkins's testimony inasmuch as it incorporates a legal interpretation of the CBA and the arbitrator's ruling. But whether this interpretation of the CBA and the arbitrator's ruling is beyond assail is beside the point: This deposition testimony appears to be offered to articulate a legitimate reason for the challenged personnel action.

activity and the retaliatory action. *See Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *Baker v. Benton Area Sch. Dist.*, 418 F. Supp. 3d 17, 48 (M.D. Pa. 2019).

In support of their summary judgment motion, the defendants primarily address the first element of these claims, arguing that Bird's conversation with Janesko on June 14, 2018, was not constitutionally protected speech because it was employment-related.[6] The defendants'

---

[6] We note that the plaintiff has argued in her brief in opposition to summary judgment that the defendants' arguments on this issue are procedurally barred by the law of the case doctrine. Although we previously considered whether Bird's conversation with Janesko on June 14, 2018, was constitutionally protected speech in denying the defendants' first motion to dismiss, *see Bird v. Borough of Moosic*, Civil No. 3:18-CV-2289, 2020 WL 969502, at *3–*4 (M.D. Pa. Feb. 28, 2020), Doc. 57, that opinion does not constitute law of the case here because it was based on a motion to dismiss, whereas this opinion considers a motion for summary judgment. *See Wiest v. Tyco Elec. Corp.*, 812 F.3d 319, 329–30 (3d Cir. 2016) (holding that because the threshold necessary to survive a motion to dismiss is lower than that necessary to survive a motion for summary judgment, opinions addressing motions to dismiss do not constitute law of the case for opinions addressing motions for summary judgment); *T.R. v. Sch. Dist. of Philadelphia*, 458 F. Supp. 3d 274, 291 (E.D. Pa. 2020) ("[T]he law of the case doctrine does not preclude a district court from granting summary judgment based on evidence after denying a motion to dismiss based only on the plaintiff's allegations.") (internal quotation marks omitted); *Baker v. Benton Area Sch. Dist.*, 418 F. Supp. 3d 17, 45 (M.D. Pa. 2019) ("Interlocutory orders such as a denial of a motion to dismiss remain open to trial court reconsideration, and do not constitute the law of the case.") (internal quotation marks omitted).

argument with respect to the filing of this lawsuit—the basis for Bird's second retaliation claim, set forth in Count II—bootstraps on their argument with respect to Count I, arguing that the commencement of this civil action by the plaintiff was not protected conduct under either the speech or petition clauses of the First Amendment because the lawsuit concerns a personal grievance only.

As a part-time police officer with the Moosic Borough police department, Bird is a public employee. It is well established that "[a] public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001). As the Supreme Court has recognized, "public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "At the same time, the Supreme Court also aptly recognizes the government's countervailing interest—as an employer—in maintaining control over their employees' words and actions for the proper performance of the workplace." *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 97, 987 (3d Cir. 2014). Thus, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions

that are necessary for their employers to operate efficiently and effectively." *Garcetti*, 547 U.S. at 419.

To determine whether a public employee's speech is protected, we must conduct a three-step inquiry. First, the employee must speak as a citizen, not as a public employee discharging her employment duties; second, the statement must involve a matter of public concern; and third, the government must lack an adequate justification for treating the employee differently from the general public. *See Dougherty*, 772 F.3d at 987; *see also Waters v. Churchill*, 511 U.S. 661, 668 (1994) ("To be protected, the speech must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.") (internal quotation marks omitted). These are questions of law for the court to determine. *See Waters*, 511 U.S. at 668; *Baldassare*, 250 F.3d at 195.

With respect to the first step, "the critical question . . . is whether the speech at issue is itself *ordinarily* within the scope of an employee's duties, not whether it *merely concerns* those duties." *Lane v. Franks*, 573

U.S. 228, 240 (2014) (emphasis added); *see also Baker*, 418 F. Supp. 3d at 48 (quoting *Lane*). Here, Bird clearly spoke with the police chief as a *citizen*, rather than in her capacity as a police officer. While the Borough council's decision to promote three male part-time officers to full-time status may have been related to her employment as police officer (and her desire to have an opportunity to compete for such positions as well), criticism of policy decisions by the Borough's governing body does not ordinarily fall within the scope of her duties as a police officer. To the extent the council's decision can be said to be illegal—as the plaintiff has argued it was—it is was nevertheless not *criminal*, nor a violation of any non-criminal laws for which a rank-and-file police officer is ordinarily charged with a duty to enforce. The timing and manner of her meeting with Janesko is also consistent with this conclusion: She met with the police chief on a day when she was not scheduled to work, dressed in her civilian clothes; if she had been speaking with him in her official capacity as a police officer, it would be reasonable to expect her to be in uniform and "on the clock" when she did so.

With respect to the second step, "[s]peech involves a matter of public concern when, considering the 'content, form, and context of a

given statement,' it can 'be fairly considered as relating to any manner of political, social, or other concern to the community.'" *Dougherty*, 772 F.3d at 987 n.5 (quoting *Connick v. Myers*, 461 U.S. 138, 146, 147–48 (1983)). Here, Bird's speech did not only assert a private, personal grievance regarding her employment opportunities, but it also touched on matters of public concern, including both illegal official conduct by the Borough council and gender discrimination in the Borough's police department. *See Azzaro v. Cty. of Allegheny*, 110 F.3d 968, 978 (3d Cir. 1997) (en banc) (holding that gender discrimination is "as much a matter of public concern as racial discrimination"); *Feldman v. Philadelphia Hous. Auth.*, 43 F.3d 823, 829 (3d Cir. 1994) ("Disclosing corruption, fraud, and illegality in a government agency is a matter of significant public concern.").

With respect to the third step, we are required by Supreme Court precedent to "balance . . the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Our consideration of the Borough's interests include "whether

the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). "The more tightly the First Amendment embraces the employee's speech, the more vigorous a showing of disruption must be made by the employer." *Dougherty*, 772 F.3d at 991. "With regard to the employee's interest, we must also take into account the public's interest." *O'Donnell v. Yanchulis*, 875 F.2d 1059, 1061 (3d Cir. 1989). "It is well established that speech involving government impropriety occupies the highest rung of First Amendment protection." *Dougherty*, 772 F.3d at 991 (internal quotation marks and brackets omitted).

As in *Azzaro*, we find at this third step that "[s]triking the appropriate balance in this case is not difficult." *Azzaro*, 110 F.3d at 980. Under the circumstances presented here, Bird's conversation with the police chief can be fairly characterized as concerning systemic gender discrimination. There is also a substantial public interest involved because her criticism concerned the allegedly illegal conduct of elected

officials in the performance of their official duties. Meanwhile, we find the government interests to be negligible. Bird spoke with Janesko, her supervisor, in the privacy of his office, with the door closed. The defendants have failed to adduce any evidence to suggest that the encounter caused any workplace disruption whatsoever, nor that it otherwise impaired discipline by superiors or harmony among co-workers, had a detrimental impact on any working relationships at all, impeded the performance of Bird's duties as a police officer, or interfered with the regular operation of the police department.

Weighing the foregoing, we find that, based on the evidence of record, viewed in the light most favorable to the non-moving plaintiff, Bird's conversation with Janesko on June 14, 2018, constituted constitutionally protected speech under the First Amendment. Moreover, because the defendants' argument with respect to the filing of this lawsuit rests on the very same factual premise, we find that the plaintiff's filing of this civil action constitutes both constitutionally protected speech and a constitutionally protected petition under the First Amendment.

The defendants do not address the second element of a § 1983

retaliation claim—retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights—and we have no difficulty, based on the evidence of record, finding that a reasonable jury could find the reduction in both patrol and special duty shifts and the denial of specialized training to be sufficient to satisfy this element.

The defendants do not address the third element—causation—with respect to the plaintiff's first retaliation claim, set forth in Count I.[7] With respect to the second retaliation claim, set forth in Count II, they argue that the plaintiff has failed to demonstrate sufficient temporal proximity between the filing of this civil action in November 2018 and two particular adverse actions—the denial of opportunities for CIT training and special duty on a DUI enforcement task force—that occurred approximately six months later. But, based on the evidence of record, viewed in the light most favorable to the non-moving plaintiff, we find that a reasonable jury could infer a causal link based on a record of ongoing antagonism. Bird has adduced evidence of an ongoing pattern of

_____

[7] We note that Bird testified that she noticed a reduction in her shifts almost immediately after her conversation with Janesko.

conduct—in particular, a continuing reduction in her patrol and special duty shifts and repeated denial of her requests for training and special duty shifts—sufficient to satisfy this element.[8]

Finally, we note that the defendants have articulated additional grounds for summary judgment in their reply brief that were not raised in their initial brief in support. We decline to consider such arguments raised in a reply brief for the first time. *See Bell v. Lackawanna Cty.*, 892 F. Supp. 2d 647, 688 n.41 (M.D. Pa. 2012) ("A reply brief is not the appropriate forum in which to raise new issues and the court need not address issues raised for the first time therein."); *United States v. Martin*, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) ("The Court declines to address any issue raised for the first time in a reply brief. A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues.").

Accordingly, the defendants' motion for summary judgment will be denied with respect to Counts I and II of the second amended complaint,

---

[8] The causal link with respect to the filing of this lawsuit may be weaker than the causal link concerning Bird's June 2018 encounter with Janesko, but we find it sufficient to survive summary judgment.

asserting § 1983 retaliation claims against Janesko and the Borough.

## B. Title VII and PHRA Claims

In Count IV, Bird asserts Title VII and PHRA gender discrimination, hostile work environment, and retaliation claims against the Borough based on the same circumstances as her § 1983 claims. In Count V, Bird asserts PHRA gender discrimination and retaliation claims against Chief Janesko based on his role in the same. She claims that the Borough's promotion of three male part-time police officers to full-time service without civil service testing or a public notice of vacancy, and without providing the same opportunity to her or other potential female candidates, was gender-based discrimination. After complaining to her supervisor, Janesko, about this allegedly discriminatory employment action, she claims that her work shifts—both patrol and special duty—were reduced in favor of her male part- and full-time colleagues, both because of her gender and in retaliation for her complaint. As a result, she suffered a loss of income. She also claims that she was denied certain training opportunities that were afforded to other, male part-time officers.

Federal courts evaluate Title VII and PHRA gender discrimination

and retaliation claims under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 325–26 (3d Cir. 2015) (Title VII retaliation); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (Title VII discrimination); *see also Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) ("[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently."). Under this framework, the plaintiff bears the initial burden of making out a prima facie case by producing evidence sufficient to raise an inference of discrimination or retaliation. *See Jones*, 796 F.3d at 326; *Fuentes*, 32 F.3d at 763. The burden of production is then shifted to the employer to articulate a legitimate reason for its conduct. *See Jones*, 796 F.3d at 326; *Fuentes*, 32 F.3d at 763. Once the employer satisfies this relatively light burden, the burden rebounds to the plaintiff, who must produce evidence from which a reasonable jury could conclude either that (1) the employer's explanation was pretextual or (2) discrimination or retaliation likely was a motivating cause for the employment action. *See Jones*, 796 F.3d at 326; *Fuentes*, 32 F.3d at 763–64.

The defendants here have moved for summary judgment on these claims solely on the first step of the *McDonnell-Douglas* test.[9] They contend the plaintiff has failed to produce any evidence of discrimination.

To establish a prima facie case of gender discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of discrimination. *See Jones*, 796 F.3d at 327; *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013); *Fuentes*, 32 F.3d at 763. There is no dispute that the first three elements are satisfied: Bird is female, she was qualified to serve as a police officer, and she was not permitted to compete for the three full-time positions filled in June 2018 and thereafter denied work shifts and training opportunities that were instead given to her male counterparts. With respect to the fourth

_____

[9] Although the defendants' statement of material facts alludes to the Borough's compliance with an arbitrator's ruling in a labor dispute as a possible legitimate reason for the promotion of three male part-time officers to full-time status in June 2018, neither side has addressed the second or third steps of the *McDonnell Douglas* framework in their briefs. Regardless, we find the evidence of record, when viewed in the light most favorable to the non-moving plaintiff, sufficient for a reasonable jury to conclude that discrimination or retaliation likely was a motivating cause for the various adverse employment actions identified by the plaintiff.

element, based on the evidence of record, viewed in the light most favorable to the non-moving plaintiff, Bird has adduced sufficient evidence for a reasonable jury to infer that these employment actions were the product of gender discrimination.

To establish a prima facie case of retaliation, a plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Jones*, 796 F.3d at 329; *Fogleman*, 283 F.3d at 567–68. Here, Bird complained to her supervisor, Chief Janesko, about promotion of three male police officers from part- to full-time status without civil service testing or public notice of the vacancy, denying her the opportunity to compete for those positions. Immediately thereafter, her patrol and special duty shifts were reduced in favor of assignment of these work opportunities to other, male police officers. This pattern of conduct continued over a course of years, eventually also including the denial of training opportunities afforded to her male counterparts. Based on the evidence of record, viewed in the light most favorable to the non-moving plaintiff, Bird has adduced sufficient evidence to establish a

prima facie case of retaliation under Title VII and the PHRA.

The Third Circuit has held that the *McDonnell Douglas* burden-shifting framework does not apply to Title VII hostile work environment claims, because there can be no legitimate justification for a hostile work environment. *See Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 213 n.11 (3d Cir. 2017). To prevail on a hostile work environment claim, a plaintiff must show that: "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability." *Mandel*, 706 F.3d at 167. Although the plaintiff alluded to some general workplace hostility in her pleadings and her deposition testimony, she has failed to adduce any evidence of severe or pervasive discriminatory conduct by either her co-workers or her supervisors. Although the long-running issue of Bird being scheduled to work fewer or less desirable shifts than her male counterparts may have been sufficiently impactful to constitute adverse employment action in support of her discrimination and retaliation claims, this particular conduct falls short of being severe

or pervasive enough to establish a hostile work environment. *See Goode v. Camden City Sch. Dist.*, Civil No. 16-03936 (RBK/JS), 2019 WL 6243156, at *19 (D.N.J. Nov. 22, 2019); *Parker v. G4S Secure Solutions USA Inc.*, 2017 WL 1058463, at *4 (D.S.C. Mar. 3, 2017).

Accordingly, the defendants' motion for summary judgment will be denied with respect to the plaintiff's Title VII and PHRA gender discrimination and retaliation claims against Janesko and the Borough, set forth in Counts IV and V of the second amended complaint, but it will be granted with respect to the plaintiff's Title VII and PHRA hostile work environment claims against the Borough, set forth in Count IV of the second amended complaint.

## C. Claims for Punitive Damages

The defendants have also moved for summary judgment with respect to the plaintiff's request for punitive damages. In their briefs, the defendants note that punitive damages are not available under Title VII or the PHRA, and they are not available under § 1983 as against the Borough or against its police chief in his official capacity. They acknowledge that that punitive damages are available against Janesko in his personal capacity, but argue that the plaintiff has failed to adduce

any evidence to support such a claim for punitive damages.

In her second amended complaint, the plaintiff requests punitive damages as relief only with respect to her § 1983 retaliation claims against Janesko in his personal capacity. She does not seek punitive damages from Janesko in his official capacity, nor does she seek punitive damages from the Borough itself, or under Title VII or the PHRA.

That leaves only the plaintiff's personal capacity § 1983 claims against the police chief. Based on the evidence of record, however, viewed in the light most favorable to the non-moving plaintiff, we find that a reasonable jury could conclude that Janesko's conduct was "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Alexander v. Riga*, 208 F.3d 419, 430–31 (3d Cir. 2000).

Accordingly, the defendants' motion for summary judgment will be denied with respect to the plaintiff's § 1983 claim for punitive damages against Chief Janesko in his personal capacity.

## V.   CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment will be granted in part and denied in part, and this matter will

be set down for trial before a jury.

An appropriate order follows.

Dated: September 24, 2021          ***s/Joseph F. Saporito, Jr.***
                                   JOSEPH F. SAPORITO, JR.
                                   United States Magistrate Judge